IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| REBECCA BEASLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:17-cv-563-TFM |
| | ) | [wo] |
| BLAKE GUMPRECHT, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

This action is assigned to the undersigned magistrate judge to conduct all proceedings and order entry of judgment by consent of all the parties (Docs. 12-13, filed 11/6/17) and 28 U.S.C. § 636(c). Pending before the Court is *Plaintiff's Motion to Remand* (Doc. 7, filed 9/20/17). The motion has been fully briefed and is ripe for review. Having considered the motion, response, and relevant law, the Court finds the motion to remand is due to be **GRANTED**.

### I.    FACTS AND PROCEDURAL HISTORY

Plaintiff Rebecca Beasley ("Beasley" or "Plaintiff") filed this a complaint in Barbour County, Alabama Circuit Court on July 17, 2017. *See* Doc. 1, Exhibit 4, Complaint. Plaintiff's lawsuit alleges counts of Breach of Contract, Conversion, and Libel and/or Slander against Defendant Blake Gumprecht ("Gumprecht" or "Defendant"). *Id*. The Complaint does not provide for a specific amount of damages sought, but requests "both compensatory and punitive damages as the Court may deem just and appropriate, along with her costs in this action." *Id*. at p. 4.

On August 22, 2017, Defendant filed a Notice of Removal in this court based on an

assertion of diversity jurisdiction. *See* Doc. 1, generally. Defendant states in his Notice of Removal that the case is properly removable under 28 U.S.C. §1441 because the United States District Court has original jurisdiction over this case under 28 U.S.C. §1332.

Specifically, Defendant asserts diversity jurisdiction exists in this case because the amount in controversy exceeds the $75,000 jurisdictional threshold and complete diversity of citizenship exists among the parties. Plaintiff is a citizen of Alabama and Defendant is a citizen of North Dakota.

Plaintiff timely filed her motion to remand on September 20, 2017. *See* Doc. 7. In the motion to remand, Plaintiff asserts the amount in controversy does not meet the jurisdictional threshold. Concurrent with the motion to remand, Plaintiff also filed a Stipulation of Amount in Controversy wherein she stated she does not seek any amount in excess of $74,999.00 exclusive of interest and costs. *See* Doc. 6. Plaintiff further asserts that Defendant's counterclaims cannot be used to establish the amount in controversy exceeds $75,000.00.

Defendant timely responded to the motion to remand on October 12, 2017. *See* Doc. 11. In the response, Defendant argues that the amount being negotiated was between $70,000 and $120,000. Defendant bases this number on the email exchange between Plaintiff's counsel and Defendant which included the counterclaims. *See* Doc. 1, Exhibit 2. Further, Defendant states he "alleges a complete loss of his business investment of [$70,000.00] plus incidental and consequential damages, as well as punitive damages for his count of Promissory Fraud." *See* Doc. 11 at p. 2. Defendant also attaches to the response to remand three exhibits: (1) an asset sale agreement, (2) Building Sale Agreement, and (3) Barbour Tax Assessment. *See* Doc. 11, Exhibits A-C. Per Exhibit C, the Barbour County Tax Assessment attached values the property and building at $49,100.00. In Exhibit A, the sales price for the assets listed in the section are

$50,000.00. In the Exhibit B, the sales price of the property was for $20,000.00. Next Defendant argues the Court must consider the unspecified damages amount also includes a punitive damage claim. Finally, Defendant argues that the stipulation of amount in controversy has no effect on this Court's jurisdiction and is solely an attempt to manipulate the forum.

The motion is fully brief and ripe for review of whether this Court has diversity jurisdiction.

## II. STANDARD OF REVIEW

Federal courts have a strict duty to exercise jurisdiction conferred on them by Congress. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716, 116 S. Ct. 1712, 1720, 135 L.Ed.2d 1 (1996). However, federal courts are courts of limited jurisdiction and possess only that power authorized by Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L.Ed.2d 391 (1994); *Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1095 (1994). Defendant, as the party removing this action, have the burden of establishing federal jurisdiction. *See Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002) (citing *Williams v. Best Buy Co.*, 269 F.3d 1316, 1318 (11th Cir. 2001)). Further, the federal removal statutes must be construed narrowly and doubts about removal must be resolved in favor of remand. *Allen v. Christenberry*, 327 F.3d 1290, 1293 (11th Cir. 2003) (citing *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996)); *Burns*, 31 F.3d at 1095 (citations omitted).

## III. DISCUSSION AND ANALYSIS

Since this lawsuit began in state court, the court's jurisdiction depends on the propriety of removal. Diversity jurisdiction exists where there is diversity of citizenship and the amount in controversy exceeds $ 75,000, exclusive of interest and costs. 28 U.S.C. § 1332. Section 1446(b) then answers the question of when an action is removable, setting forth the

preconditions for removal in two types of cases: (1) those removable on the basis of an initial pleading; and (2) those that later become removable on the basis of "a copy of an amended pleading, motion, order or other paper." The notice of removal must "be filed within thirty days after the receipt by the defendant … of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b).

"A party removing a case to federal court based on diversity of citizenship bears the burden of establishing the citizenship of the parties." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004). Therefore, removal jurisdiction based upon diversity requires: (1) a complete diversity of citizenship between the plaintiff(s) and the defendant(s) and (2) satisfaction of the amount in controversy requirement. Further, "[f]or purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(c). Therefore, the complete diversity of citizenship exists and is not disputed. Thus, the Court looks to the amount in controversy.

"[I]n the removal context, when damages are unspecified, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence." *Lowery*, 483 F.3d at 1208-09 (quoting *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356-57 (11th Cir. 1996) (adopting the "preponderance of the evidence" standard after examining the various burdens of proof in different factual contexts)). The Eleventh Circuit has held that "[in]n some cases, [the amount in controversy] burden requires the removing defendant to provide additional evidence demonstrating that removal is proper." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (citing *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744 (11th Cir. 2010)). "The substantive jurisdictional requirements of removal do not limit the types of evidence that may be used to satisfy the preponderance of the evidence standard. Defendants may introduce

their own affidavits, declarations, or other documentation--provided of course that removal is procedurally proper." *Pretka*, 608 F.3d at 755.

Finally, in the context of removal, the amount in controversy is determined solely by referring to the plaintiff's complaint and without regard to any subsequently filed counterclaims. *First Guar. Bank & Trust Co. v. Reeves*, 86 F. Supp. 2d 1147, 1154 (M.D. Fla. 2000); *Conference Am. Inc. v. Q.E.D. Int'l, Inc.*, 50 F. Supp. 2d 1239, 1242 (M.D. Ala. 1999) (citations omitted). As such, the Court here will not consider Defendant's counterclaims, but only Plaintiff's original complaint since that is the document upon which removal was made.

Defendant's notice of removal does not provide specifics in the body of the pleading as to the basis for the amount being in excess of $75,000. However, attached to the notice is email correspondence between Plaintiff's counsel and Defendant (prior to his representation). In the email, Plaintiff's counsel states:

> Mrs. Beasley would like her personal property returned to her. She is also entitled to damages for defamation. As you may know, this could include punitive damages because of your failure to retract the defamatory statements once requested. Are you interested in turning the building and newspaper back over to Mrs. Beasley instead of a monetary settlement?

*See* Doc. 1, Exhibit 2, at p. 3-4. Thus, between the complaint and the email correspondence, no specific monetary demand was made by Plaintiff. In response to the email, Defendant specified his monetary damages and beyond. *Id*. at p. 1-3. However, Defendant's demands are not the issue here. In the case at hand, the original complaint controls the removal process. Defendant cites to "Plaintiff's several demands for equitable and punitive relief" and also notes that "the 'Stipulation of Amount in Controversy' filed by the Plaintiff cannot divest the Court of jurisdiction once it has attached." *See* Doc. 11 at p. 4. The Court will address both arguments.

As previously noted, Defendant provides three exhibits in support of his argument: (1) an

asset sale agreement, (2) building sale agreement, and (3) Barbour Tax Assessment. *See* Doc. 11, Exhibits A-C. Per Exhibit C, the Barbour County Tax Assessment values the property and building at $49,100.00. In Exhibits A-B, the sales price for the assets listed in the section are $50,000.00 and the sales price of the property was for $20,000.00. By Defendant's own statements in his email responses, the business failed which would necessarily reduce its value. Therefore, when considering Plaintiff's offer to accept "the building and the newspaper back" in lieu of a monetary offer, the valued amount of Plaintiff's offer would not be $70,000 ($50,000 + $20,000) which was the original sales price for both the business and the property. Rather, the amount is still some unidentified number less than $70,000.00. Even considering the contractual total amount Defendant attempts to use to support the assertion that the "amount in controversy" is over $75,000.00, Defendant still fails in establishing by a preponderance of the evidence that the amount in controversy is over $75,000.00. Even if the Court used the original contract sales price as the defining number, Plaintiff offered to accept the building and newspaper as a settlement for *all* her claims (to include the punitive damages claim) instead of a monetary settlement offer. Therefore, this would establish the amount in controversy has a ceiling of $70,000 when only considering *Plaintiff's* claims and excluding Defendant's counterclaims. Moreover, the stipulation of the amount in controversy merely clarifies that point as explained below.

Subsequent events which may reduce the damages recoverable below the amount in controversy requirement do not deprive the court of jurisdiction. *See Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002) ("we note that for purposes of this challenge ... the critical time is the date of removal .... If jurisdiction was proper at that date, subsequent events, even the loss of the required amount in controversy, will not operate to divest the court of

jurisdiction."); *Poole v. American-Amicable Life Ins. Co. of Texas*, 218 F.3d 1287, 1291 (11th Cir. 2000), *overruled in part on other grounds in Alvarez v. Uniroyal Tire Co.*, 508 F.3d 639, 641 (11th Cir. 2007) ("events occurring after removal which may reduce the damages recoverable below the amount in controversy requirement do not oust the district court's jurisdiction.").

However, this does not mean that post-removal facts may never be considered when evaluating jurisdiction. "Rather the law is clear that post-removal developments are properly weighed where they shed light on the amount in controversy at the time of removal." *Land Clearing Co., LLC v. Navistar, Inc.*, Civ. Act. No. 11-0645-WS, 2012 U.S. Dist. LEXIS 8603, 2012 WL 206171, *3 (S.D. Ala. Jan. 24, 2012) (Steele, J.) (citing *Pretka*, 608 F.3d at 772-73; *Sierminski v. Transouth Financial Corp.*, 216 F.3d 945, 949 (11th Cir. 2000)). "[W]hat is prohibited are post-removal changes in the amount in controversy, not post-removal clarifications of the amount that was in controversy at the moment of removal." *Jackson v. Select Portfolio Servicing, Inc.*, 651 F. Supp.2d 1279, 1282 (S.D. Ala. 2009). Further, Plaintiff is "the master of the complaint and is free to avoid federal jurisdiction, by structuring [the] case to fall short of a requirement of federal jurisdiction. [Courts] permit this so long as the method of avoidance is not fraudulent." *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013) (internal citations and quotations omitted).

Defendant is accurate in the assertion that a stipulation of the amount in controversy cannot deprive the court of jurisdiction where it originally existed. However, that is not the situation in the case at hand. Considering that the original contract for the business and building totaled $70,000 and Plaintiff offered to accept them back as settlement, the Stipulation of Amount in Controversy does not attempt to *alter* facts, but rather merely *clarify* and reiterate the

fact that the amount sought is less than $75,000.00. Thus, the Court never had diversity jurisdiction.

Defendant argues that Plaintiff has not shown "to a legal certainty" that she could not recover more than the amount she purports to stipulate to." *See* Doc. 11 at p. 6. However, the burden here does not rest with Plaintiff, but rather with Defendant to establish that removal was appropriate. The Court declines to inappropriately shift the burden to Plaintiff and determines Defendant has failed to establish by a preponderance of the evidence that the amount in controversy satisfied the jurisdictional threshold.

Finally, Defendant seeks costs in the event the case is remanded. *See* Doc. 11 at p. 5. Defendant relies upon reasoning discussed in *Brooks v. Pre-Paid Legal Servs.*, 153 F. Supp. 2d 1299 (M.D. Ala. 2001). However, the facts in that case are distinguishable from the one at hand. In that case, the Plaintiffs initially sought "$74,500 and unspecified punitive damages" and after removal filed an affidavit stating they never intended to seek over $74,500. *Id*. at 1300. The Court also expressed concerns regarding litigants who seek "to limit their damages and return to state court only after litigation has taken an unfavorable turn." *Id*. at 1302. While perhaps the complaint could have specified an amount less than $75,000, there is no requirement that a Plaintiff do so. Further, the *Brooks* plaintiffs sought $74,500 *plus* punitive damages. This is a much clearer path to crossing the jurisdictional threshold. In the case at hand, Defendant primarily relied upon the crossclaims to establish jurisdiction. Therefore, no costs for the removal and remand shall be taxed against the Plaintiff at this time.

### IV. CONCLUSION

Pursuant to the foregoing Memorandum Opinion, the Court grants the *Motion to Remand* (Doc. 7) and this action is REMANDED to the Circuit Court of Barbour County, Alabama. The

Clerk of the Court is DIRECTED to take appropriate steps to effectuate the remand.

DONE this 22nd day of December, 2017.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE